UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. ROSEMARY ADMIRAL and DR. BEN WRIGHT, | § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § § | Civil Action No. 3:25-CV-2843-X |
| UNIVERSITY OF TEXAS AT DALLAS, et al., | § § § | |
| *Defendants.* | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to dismiss (Doc. 16) from Defendants The University of Texas at Dallas (UTD); The University of Texas System (UT System); Dr. Richard Benson (Benson), in his individual capacity as UTD President at the time of the protest; Dr. Prabhas V. Moghe (Moghe), in his individual and official capacity as current President of UTD; Attorney General Ken Paxton (Paxton), in his official capacity; and Governor Greg Abbott's (Abbott), in his individual and official capacity, (collectively, "Defendants"). After reviewing the record and applicable law, the Court **GRANTS** the motion and **DISMISSES WITHOUT PREJUDICE** the First Amended Complaint (complaint). The Court **GRANTS** Plaintiffs Dr. Rosemary Admiral (Admiral) and Dr. Ben Wright's (Wright) leave to amend their complaint to cure its deficiencies within 28 days of this Order.

1

## I.  Background

This case arises from one of the many on-campus pro-Palestine protests that followed the October 7, 2023, attack on Israel.  In March 2024, Abbott issued Executive Order No. GA-44, which addressed "acts of antisemitism in institutions of higher education" and specifically called for the enforcement of policies addressing the rise in antisemitism.[1]  In particular, the executive order called for "groups such as the Palestine Solidarity Committee and Students for Justice in Palestine [to be] disciplined for violating these policies."[2]

Admiral is a tenure-track Assistant Professor at UTD and Wright is a tenured Associate Professor at UTD.  Admiral is a hijabi Muslim woman.  Both professors were present and subsequently arrested at a May 2024 pro-Palestinian campus protest at UTD.  The professors were released, but Admiral and Wright allege that they were—and continue to be—subjected to adverse conditions, retaliation, and disparate treatment by UTD officials.  Admiral and Wright have since brought this case against the Defendants alleging various causes of action.  The Defendants seek dismissal of all claims, asserting they are barred by sovereign immunity, qualified immunity, and/or failure to state a claim.

---

[1]  Texas Governor Greg Abbott's Executive Order GA-44 (Mar. 27, 2024) (https://gov.texas.gov/uploads/files/press/EO-GA-44_antisemitism_in_institutions_of_higher_ed_IMAGE_03-27-2024.pdf (last visited July 15, 2026)).

[2] *Id.*

## II. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal for "lack of subject matter jurisdiction."[3]  When a party files a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction in conjunction with other Rule 12 motions, a court must resolve the jurisdictional challenge first.[4]  This prevents a court that lacks jurisdiction from improperly dismissing a case on its merits.[5]

The party asserting jurisdiction carries the burden to prove it.[6]  At the pleading stage, the party may meet its burden by alleging a plausible set of facts that establish jurisdiction.[7]  A court may look to: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[8]

To survive a Rule 12(b)(6) dismissal, a complaint must "state a claim upon which relief can be granted."[9]  The complaint must allege facts sufficient "to state a claim to relief that is plausible on its face."[10]  And there must be sufficient facts for the Court to be able "to draw the reasonable inference that the defendant is liable for

---

[3] FED. R. CIV. P. 12(b)(1).

[4] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[5] *Id.*

[6] *See id.*

[7] *See id.*

[8] *Id.*

[9] FED. R. CIV. P. 12(b)(6).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

the misconduct alleged."[11]   In its evaluation, the Court construes the complaint liberally in favor of the plaintiff and accepts all well pled facts in the complaint as true.[12]   Conclusory statements or legal conclusions are not credited.[13]

### III. Analysis

Before reviewing the Defendants' arguments in its Motion, the Court must first confirm its jurisdiction, even *sua sponte*.[14]   That is because "[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree."[15]   "Without jurisdiction the court cannot proceed at all in any cause."[16]

### A.    Standing

One jurisdictional bar the parties failed to brief, but the Court must consider, is standing.[17]   To have standing, Admiral and Wright must demonstrate they have "suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[18]   Since "standing is not dispensed in gross . . . plaintiffs must demonstrate

---

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[13] *See Ashcroft*, 556 U.S. at 678.

[14] *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) ("This court has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary." (cleaned up)); *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (cleaned up)).

[15] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up).

[16] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (cleaned up).

[17] *Henderson v. Stalder*, 287 F.3d 374, 379 n.5 (5th Cir. 2002) (holding that courts are "obliged to raise the jurisdictional issue of standing *sua sponte* despite the parties' failure to raise it.").

[18] *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (cleaned up).

standing for each claim that they press against each defendant, and for each form of relief that they seek."[19]  Rather than "unadorned speculation," which "will not suffice to invoke the federal judicial power," courts look for specific factual allegations in a plaintiff's complaint that satisfy the three standing requirements.[20]

Here, the complaint directs nearly all of its claims "against all Defendants."[21] Further, nearly all forms of relief are requested against the "Defendants" generally.[22] Given the myriad of Defendants, claims, and requested forms of relief, the Court must determine, as a threshold issue, whether standing exists for each defendant as it pertains to each form of relief.

### i.    Injury In Fact

An injury in fact must be concrete, particularized, and actual or imminent.[23] To be concrete, the injury "must be real and not abstract."[24]  To be particularized, "the injury must affect the plaintiff in a personal and individual way and not be a generalized grievance."[25]  To be actual or imminent, "the injury must have already occurred or be likely to occur soon . . . [a]nd when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future

---

[19] *Id.* at 61 (cleaned up).

[20] *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 44 (1976).

[21] Doc. 12 ¶¶ 180–99, 217–60; *but see* Doc. 12 ¶¶ 200–16 (alleging Title VI claim only against the defendants UTD and UT System).

[22] *Id.* at 30.

[23] *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

[24] *Id.*

[25] *Id.* (cleaned up).

injury."[26]    Here, the alleged injuries are concrete, particularized to Admiral and Wright, and either actual or imminent.[27]  Allegations stemming from the May 2024 arrests and "ongoing adverse conditions, retaliation and disparate treatment," would be an injury, if cognizable.[28]

### ii.    Traceability

To establish traceability, "the plaintiff must show a predictable chain of events leading from the action to the asserted injury—in other words, that the action has caused or likely will cause injury in fact to the plaintiff."[29]  This inquiry seeks to determine "whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged."[30]  "As with all standing requirements, traceability may not be based on speculation."[31]  Moreover, the line of causation must be "more than attenuated."[32]

The Fifth Circuit has established that "there is significant overlap between its standing and *Ex parte Young* analyses,"[33] and that the issues of traceability and determining the right defendant "involve similar questions."[34]  The Court applies this traceability standard to each defendant individually.

---

[26] *Id.*

[27] *See* Doc. 12 ¶ 135, 180–259.

[28] Doc. 12 ¶ 135.

[29] *Food & Drug Admin.*, 602 U.S. at 385 (cleaned up).

[30] *Collins v. Yellen*, 594 U.S. 220, 243 (2021) (cleaned up).

[31] *Greenwald v. Murrill*, No. 24-30661, 2026 WL 500139, at *4 (5th Cir. Feb. 23, 2026).

[32] *Turnbow v. Life Partners, Inc.*, No. 3:11-CV-1030-M, 2012 WL 4473080, at *4 (N.D. Tex. Sep. 28, 2012) (Lynn, J.) (cleaned up).

[33] *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020) (cleaned up).

[34] *Jackson v. Wright*, 82 F.4th 362, 369 (5th Cir. 2023).

### 1. Abbott, in his individual and official capacity

Admiral and Wright's injuries are not traceable to Abbott in his individual or official capacity because the complaint fails to allege the facts necessary to demonstrate Abbott caused any injuries as to Admiral and Wright.[35] Admiral and Wright allege that Abbott's Executive Order No. GA-44 "selectively punishes Palestinian-based student advocacy,"[36] by "publicly call[ing] for and direct[ing] punitive measures against students, faculty, and community members engaged in pro-Palestinian speech and protest."[37] Admiral and Wright also allege that one of Abbott's posts on X.com shows that he "escalated his animus against pro-Palestinian advocacy on college campuses."[38]

Taken as true, these assertions do not establish any causal link between the acts described and the injuries sustained by Admiral and Wright. The defendants are right to point out that the plaintiffs "fail to allege that the executive order applied to them or that they were part of the two student groups that Abbott allegedly targeted" in the Executive Order.[39] Abbott's "mere issuance of an executive order is not enough to sue him, regardless of who is on the receiving end of that order."[40] "The statutory authority . . . to issue, amend or rescind an Executive Order is not the

---

[35] *See* Doc. 12 ¶¶ 4, 35, 39–41, 52, 198.

[36] *Id.* ¶ 4.

[37] *Id.* ¶ 35.

[38] *Id.* ¶ 52.

[39] Doc. 16 at 9; *see* Texas Governor Greg Abbott's Executive Order GA-44 (calling for discipline against the Palestine Solidarity Committee and Students for Justice in Palestine).

[40] *United States v. Abbott*, 85 F.4th 328, 338 (5th Cir. 2023) (reversing and remanding the denial of a motion to dismiss).

power to enforce it."[41]   In this instance, GA-44 tasks "Texas higher education institutions"[42] with enforcement of the policies therein, and there is no enforcement role for the governor.[43]

Admiral and Wright do not allege any particular policy Abbott put in place that caused "a predictable chain of events" leading to their alleged injuries.[44]  In fact, they "have not shown that [Abbott] did anything more than promulgate" GA-44 and later make a post on X.com.[45]  Mere atmospherics does not satisfy Article III.[46]

The remaining allegations are conclusory and devoid of specifically alleged facts, merely asserting that Abbott "exercises supervisory authority over . . . the UT System and its component campuses"[47] and "actively participated in or ratified the conduct" of other defendants.[48]  Therefore, all claims against Abbott are dismissed for lack of standing.

---

[41] *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (holding that a claim that an executive order violated the Constitution did not fall within the scope of *Ex parte Young* as applied to the governor when he had no enforcement authority) (cleaned up).

[42] Texas Governor Greg Abbott's Executive Order GA-44.

[43] *See Tex. Democratic Party*, 961 F.3d at 400 (holding that, unlike state agency officials with an enforcement role, "[b]ecause the plaintiffs have pointed to nothing that outlines a relevant enforcement role for Governor Abbott, the plaintiffs' injuries likely cannot be fairly traced to him").

[44] *Food & Drug Admin.*, 602 U.S. at 385.

[45] *Abbott*, 85 F.4th at 337.

[46] Even if Admiral and Wright had pled sufficient facts to show traceability between GA-44 and their alleged injuries, claims against Abbott would still be barred by sovereign immunity.  *Ex parte Young* does not allow suit against a Governor for the mere promulgation of an executive order which tasks a state agency with its enforcement.  *See id.* at 335 ("Because GA-37 tasks DPS alone with enforcing the challenged law, and DPS is a separate entity from the Governor, our *Young* analysis ends for the Governor." (cleaned up)).

[47] Doc. 12 ¶ 35.

[48] *Id.* ¶ 198.

### 2. Paxton, in his official capacity

Admiral and Wright's injuries are similarly not traceable to Paxton. The only factual allegations about Paxton in the complaint are that "[h]e directed and endorsed measures to suppress pro-Palestinian speech and association on Texas campuses, including UTD,"[49] and that he "actively participated in or ratified the conduct described" in the first claim for relief, pursuant to 42 U.S.C. § 1981.[50] Without more, these conclusory statements do not establish a traceable chain of events to demonstrate that any specific acts by Paxton are in any way connected to the events of May 2024. There is no factual basis in the complaint for concluding that Paxton was even aware of the protest or the subsequent treatment of UTD professors. So there is certainly no "predictable chain of events" established between the alleged injuries and anything alleged about Paxton.[51] Accordingly, all claims against Paxton are dismissed for lack of standing.

### 3. UT System

Admiral and Wright's injuries are not traceable to UT System. The only facts alleged about UT System are that it oversees UTD, "promulgates policies governing campus conduct, and provides central administrative direction."[52] Admiral and Wright do not allege that UTD's actions were driven by any directive or policy promulgated by UT System. Although Admiral and Wright's opposition brief

---

[49] *Id.* ¶ 34.

[50] *Id.* ¶¶ 34, 198.

[51] *Food & Drug Admin.*, 602 U.S. at 385.

[52] Doc. 12 ¶ 33.

retroactively asserts that the complaint alleges that "UT System, emboldened by Governor Abbott's statements on social media, created an atmosphere of heightened scrutiny and punishment for pro-Palestinian expression and advocacy,"[53] every citation to support this assertion relates either to Abbott or UTD, not UT System.[54] Similarly, Admiral and Wright's retroactive assertion that the complaint alleges that "UT System disproportionately penalized [the Plaintiffs] for their peaceful advocacy, and refused to change their positions on [the] Plaintiffs' punishment despite the absence of any supporting evidence against [the] Plaintiffs,"[55] cites allegations attributable only to UTD and Benson, not UT System.[56]

Further, even if these retroactive assertions were accurate descriptions of the complaint, they are wholly conclusory and do not allege any specific acts by UT System that are traceable to the alleged injuries. Because Admiral and Wright have not alleged any specific facts about UT System's actions, there is no "predictable chain of events" to establish that Admiral and Wright's injuries are traceable to UT System.[57] Therefore, the Court dismisses all claims against UT System for lack of standing.

---

[53] Doc. 19 at 14.

[54] *Id.*; *see* Doc. 12 ¶¶ 39, 42–52, 156–67.

[55] Doc. 19 at 14–15.

[56] *Id.*; *see* Doc. 12 ¶¶ 135–55, 168–79.

[57] *Food & Drug Admin.*, 602 U.S. at 385.

### 4. Moghe, in his individual and official capacity

Admiral and Wright's injuries are not traceable to Moghe.  Moghe is only referenced in a single paragraph of the complaint—when he is listed as a party.[58] There, Admiral and Wright allege that Moghe "authorized, condoned and/or ratified the unlawful conduct toward [the] Plaintiffs following the May 1, 2024 protest, and interfered with [the] Plaintiffs' contractual rights in violation of the law."[59]  Aside from this conclusory statement, there is no allegation of specific fact to demonstrate Moghe acted in any way to violate the law.  Because there is no "predictable chain of events" established between the alleged actions of UTD following the protest and Moghe, all claims against Moghe are dismissed for lack of standing.[60]

### 5. Benson, in his individual capacity

Contrastingly, Admiral and Wright's injuries are traceable to Benson.  Admiral and Wright allege that, despite having access to and knowledge of information to the contrary, then-President of UTD Benson "publicly claimed he did not know whether the arrestees were armed or had criminal records."[61]  Taken as true, this factual allegation bolsters the claim that he "was at all times aware of the unlawful discrimination against [the] Plaintiffs and responded with approval and, at best,

---

[58] Doc. 12 ¶ 32.

[59] *Id.*

[60] *Food & Drug Admin.*, 602 U.S. at 385.

[61] Doc. 12 ¶ 169–71.

deliberate indifference."[62]  Admiral and Wright thereby establish "a predictable chain of events" between their alleged injuries and Benson's actions.[63]

### 6.  UTD

Admiral and Wright's injuries are traceable to UTD.  Admiral and Wright allege that UTD responded unlawfully to the May 2024 protest and engaged in viewpoint-based discriminatory retaliation against them.[64]  Admiral and Wright make specific factual assertions about the actions of various UTD administrators and officials before and during the protest to allege that "UTD singled out pro-Palestinian advocacy for disproportionate response."[65]  These include assertions that "UTD officials targeted professors and students for their advocacy on behalf of Palestinians,"[66] and "punished individuals who engaged in protected speech, silenced those who defended them, and cultivated an atmosphere of fear and censorship that persists today."[67]  These alleged facts establish "a predictable chain of events" between specific UTD actions and Admiral and Wright's injuries.[68]

### iii.    Redressability

The traceability and redressability requirements "are often flip sides of the same coin," because "[i]f a defendant's action causes an injury, enjoining the action or

---

[62] *Id.* ¶ 215.

[63] *Food & Drug Admin.*, 602 U.S. at 385.

[64] Doc. 12 ¶ 39–179.

[65] *Id.* ¶ 157.

[66] *Id.* ¶ 166.

[67] *Id.* ¶ 167.

[68] *Food & Drug Admin.*, 602 U.S. at 385.

awarding damages for the action will typically redress that injury."[69]  Here, as it relates to UTD, Admiral and Wright point to injuries in fact that are traceable and would be redressed either by damages or an injunction.  With regard to Benson, however, the stated injuries could only be redressed by damages—not injunctive relief—because all alleged action on his part occurred in the past and he is no longer the president of UTD.[70]  Therefore, there can be no injunctive relief available against Benson.

## B.    Sovereign Immunity

Another jurisdictional bar is state sovereign immunity.[71]  "Sovereign immunity bars private suits against nonconsenting states in federal courts."[72] Sovereign immunity "also bars suits against state actors in their official capacities that are effectively suits against a state."[73] "Suits against the State under 42 U.S.C. § 1983 are doubly dismissible because the State is not a person under that statute."[74] There are two primary exceptions.  "First, Congress may expressly abrogate state sovereign immunity."[75]  Second, *Ex parte Young* "permits suits for prospective relief against state officials acting in violation of federal law."[76]

---

[69] *Id.* at 380–81 (cleaned up).

[70] *See* Doc. 12 ¶¶ 31, 169–71, 178.

[71] *See, e.g.*, *City of Aus. v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) ("In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court.").

[72] *Wright*, 82 F.4th at 367 (cleaned up).

[73] *Id.* (cleaned up).

[74] *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 311 (5th Cir. 2021) (cleaned up).

[75] *Green Valley*, 969 F.3d at 471.

[76] *Id.* (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)) (cleaned up).

13

The Court only analyzes the sovereign immunity defense as it applies to UTD because Benson is sued in his individual capacity.  Because Congress has "expressly abrogated States' sovereign immunity" under Title VI, Admiral and Wright's Title VI claims against UTD are not barred by sovereign immunity.[77]  However, UTD is "an arm of the State and, therefore, an entity entitled to sovereign immunity"[78] as to Admiral and Wright's claims brought under section 1983.  The *Ex parte Young* exception does not apply because UTD is not an "individual state official[]."[79]  Accordingly, the Court dismisses for lack of subject matter jurisdiction all section 1983 claims against UTD.[80]

### C.   Qualified Immunity

The motion also alleges that qualified immunity bars Admiral and Wright's claims against Benson.  When a defendant raises qualified immunity as a defense, the analysis changes and the burden shifts to the plaintiff to show (1) the violation of a constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[81]  "Therefore, unless existing precedent squarely governs the conduct at issue, an official will be entitled to qualified immunity."[82]  "The burden here is heavy," as a

---

[77] *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

[78] *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (cleaned up).

[79] *Id.* (cleaned up).

[80] *See* Doc. 12 ¶¶ 180–99, 217–59.

[81] *See Connelly v. Tex. Dep't of Crim. Just.*, 484 F.3d 343, 346 (5th Cir. 2007).

[82] *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (cleaned up) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)).

14

"right is clearly established only if preexisting precedent has placed the constitutional question beyond debate."[83]  That heavy burden is not met with citation to general principles.[84]  Admiral and Wright contend that Benson:

> [A]uthorized, condoned, or failed to prevent the unlawful arrest and punishment of [the] Plaintiffs and other community members in connection with the May 1 protest, interfered with [the] Plaintiffs' contractual rights in violation of the law and made false public statements about [the] Plaintiffs designed to interfere with their employment status and professional reputations.[85]

Admiral and Wright cite two cases holding that "viewpoint discrimination in a public university is unlawful."[86]  Neither of these cases involve discrimination by a university president against attendees of a protest at a public university.  While "it is not necessary that a previous case presenting identical facts exist in order for a right to be clearly established,"[87] courts still require that the "unlawfulness of the challenged conduct must be beyond debate," especially when the plaintiff fails to point to any case law that squarely governs the undisputed facts.[88]  That is a "rare" occurrence.[89]

Here, Admiral and Wright have failed to identify a single case that governs the specific conduct at issue here.  Assuming without deciding that Admiral and Wright

---

[83] *Harmon v. City of Arlington,* 16 F.4th 1159, 1165 (5th Cir. 2021) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[84] *See id.* at 1165–66.

[85] Doc. 12 ¶ 31.

[86] *See* Doc. 19 at 18 (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) and *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017) for the proposition that universities may not discriminate based on viewpoint).

[87] *Aguirre v. City of S.A.*, 995 F.3d 395, 415 (5th Cir. 2021).

[88] *Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (cleaned up).

[89] *Id.* (cleaned up).

could show that Benson's actions constituted unconstitutional discrimination in violation of sections 1981 or 1983, this is not an obvious case of unlawful conduct "beyond debate."[90]   Benson is entitled to qualified immunity as a matter of law. Therefore, all remaining claims against Benson are dismissed.

## D. Title VI

"A complaint that does not set forth specific allegations of acts that were taken with discriminatory intent does not state a claim for Title VI violations."[91]   Wright and Admiral allege that they were discriminated against under Title VI, which protects against discrimination "on the ground of race, color, or national origin."[92] But Wright does not allege to be in any of Title VI's protected classes.   Instead, Admiral and Wright argue that "[t]he scope of Title VI includes discrimination based on shared ancestry and ethnic characteristics, including those associated with the predominant religious beliefs of that shared ancestry and the relevant ethnic characteristics and those perceived as having that shared ancestry."[93]   Building on that assertion, Wright argues that "[h]e experienced targeting, arrest, and retaliatory treatment based on his views *and association with students advocating for Palestinian rights*."[94]

---

[90] *Id.* (cleaned up).

[91] *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F.Supp.3d 602, 627 (N.D. Tex. 2017) (Lindsay, J.) (cleaned up).

[92] 42 U.S.C. § 2000d.

[93] Doc. 12 ¶ 203.

[94] *Id.* ¶ 28 (emphasis added).

16

This alleged discrimination, based merely on Wright's association with "Palestinian, Arab, and Muslim individuals,"[95] does not amount to discrimination "on the ground of race, color, or national origin."[96]  Title VI of the Civil Rights Act speaks of discrimination against "person[s]" based on their personal protected characteristics, not that of amorphous groups based on the general messaging around which they rally.[97]

Further, insofar as any discrimination was based upon religious motivation, "Title VI, on its face, does not prohibit"[98] such action, and "lower courts may not recognize causes of action when a statute has not created them."[99]

Admiral fares no better.  For the same reasons as those stated above, any arguments based on associational discrimination stemming from her involvement with the pro-Palestine protest or from perceived religious beliefs fail.  Admiral makes an additional allegation that she "experienced heightened scrutiny and punitive treatment by [the] Defendants as a result of sharing visible or perceived ethnic characteristics with hijabi Muslim women of Arab descent."[100]  However, Admiral fails to provide any factual statements to support this allegation.  Without more, the mere conclusory assertion that Admiral was punished to a greater degree than Wright does not automatically mean that such disparate treatment *must have been*

---

[95] *Id.* ¶ 204.

[96] 42 U.S.C. § 2000d.

[97] *Id.* (cleaned up).

[98] *Mohamed for A.M*, 252 F.Supp.3d at 627.

[99] *Id.* (quoting *Sandoval*, 532 U.S. at 291).

[100] Doc. 12 ¶ 205.

based on perceived race, color, or national origin.  Therefore, Admiral and Wright's remaining Title VI claims are dismissed for failure to state a claim against UTD.

### IV.   Conclusion

Accordingly, the Court **GRANTS** the Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Admiral and Wright's claims.  The Court **GRANTS** Admiral and Wright leave to amend their complaint within 28 days of this Order. Changes to the complaint are limited to remedying the defects this order identifies. The amended complaint may not add new parties or claims.

**IT IS SO ORDERED** this 20th day of July, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

18